UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | | |
|---|---|---|
| ASPEN INSURANCE UK LIMITED, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 11-15-ART |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION &** |
| MURRIEL-DON COAL, INC., et al., | ) | **ORDER** |
| | ) | |
| Defendants. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

The declaratory judgment statute—which provides that federal courts "may" enter declaratory judgments in "case[s] of actual controversy," 28 U.S.C. § 2201(a)—"confer[s] on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995). The Supreme Court has admonished that federal courts exercising this discretion should avoid "[g]ratuitous interference with the orderly and comprehensive disposition of [] state court litigation." *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 495 (1942). The Sixth Circuit has taken this to heart, "h[olding] on a number of occasions that a district court should stay or dismiss complaints filed by insurance companies seeking a declaratory judgment as to their underlying state court lawsuits." *Travelers Indem. Co. v. Bowling Green Prof'l Assocs., PLC*, 495 F.3d 266, 273 (6th Cir. 2007). Because there is no convincing reasoning to keep this run-of-the-mill insurance-coverage dispute in federal court while a parallel case is ongoing in state court, Murriel-Don's motion to dismiss is granted.

## BACKGROUND

This case began with a car accident on a mountain road. Tony Amburgey was on his way home from his job on the evening of October 30, 2008. He worked as a roof bolter at a mine operated by Murriel-Don Coal in Garrett, Kentucky. It had been a long day, and Amburgey was tired. He fell asleep at the wheel and collided with another car, seriously injuring its occupants, Roberta Jent and Albert Hudson. Jent and Hudson both sued Amburgey in Kentucky state court. A few months later, they both amended their complaints to also assert claims against Murriel-Don. They alleged that Murriel-Don had been negligent by allowing Amburgey to leave work in a dangerously soporific state. R. 15-3 at 4.

After receiving the complaint, Murriel-Don notified Aspen, its insurance carrier. Murriel-Don's general commercial liability policy obligated Aspen to "pay those sums that [Murriel-Don] becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." R. 15-1 at 9. The policy further provided that Aspen had "the right and duty to defend [Murriel-Don] against any 'suit' seeking those damages." *Id.* But the policy contained an express exclusion exempting from coverage "any and all losses, claims or occurrences arising from, caused by or contributed to by any automobile, truck, bus or other motorized vehicle." R. 15-1 at 32. Aspen had no duty to provide a defense for such claims. *Id.*

Aspen initially hired Bridget Dunaway, of the law firm Tooms & Dunaway, PLLC, to defend Murriel-Don in the Jent/Hudson action. Dunaway filed a motion to dismiss in the state court. After conducting a further examination, Aspen determined that the Jent/Hudson action

2

fell within the insurance policy's automobile exclusion and thus was not covered. Aspen sent Murriel-Don a letter on September 9, 2009, informing it that, if the state trial court denied the motion to dismiss that Dunaway had already filed, Aspen would no longer pay for Murriel-Don's defense. R. 15-4. Sure enough, the court denied the motion to dismiss in a brief order on October 29, 2009. Aspen then sent Murriel-Don a supplemental letter denying coverage. R. 15-5. Aspen formally terminated Dunaway's legal services on November 24, 2009, and Dunaway filed a motion to withdraw the next day.

After Dunaway withdrew, Murriel-Don did not retain a new attorney. But the world kept turning, and the state-court litigation continued on. Murriel-Don failed to respond to requests for admission from the plaintiffs, and as a result, the state court deemed Murriel-Don to have admitted both liability and damages. On March 20, 2010, the state court granted the plaintiffs' (unopposed) motions for judgment on the pleadings and awarded Jent $27,000,000 in damages and Hudson $15,000,000 in damages, plus twelve-percent interest.

Reeling from the weight of the $42,000,000 judgment that the state court entered against it, Murriel-Don sued Aspen, Dunaway, and Tooms & Dunaway in the Knott Circuit Court on November 5, 2010. Murriel-Don asserted several claims against Aspen—for breach of contract, breach of the duty to defend, bad faith, and violation of Kentucky's Unfair Claims Settlement Practices and Consumer Protection Acts—and two claims against Dunaway and her law firm—for legal malpractice and breach of fiduciary duty. R. 9-2. Aspen removed that case to this Court on February 16, 2011. *See Murriel-Don Coal Co. v. Aspen Ins. UK Ltd.*, No. 11-23-

3

ART (E.D. Ky) R. 1. On May 20, 2011, this Court remanded the case back to state court for lack of subject matter jurisdiction. *Id*. R. 25.

Aspen filed its complaint in this case seeking a declaratory judgment on February 2, 2011—just two weeks before it removed Murriel-Don's state-court lawsuit.[1] R. 1. The complaint names Murriel-Don, Albert Hudson,[2] and Roberta Jent as defendants. Aspen seeks a declaration that, under the insurance policy, Aspen has no duty to defend Murriel-Don against the Jent/Hudson lawsuit or to to indemnify Murriel-Don for the damages awarded to the plaintiffs in that case. *Id.* at 7-8. Murriel-Don filed a motion to dismiss Aspen's declaratory-judgment action on the theory that the state court is the more appropriate forum. R. 9. Defendant Roberta Jent also filed a motion to dismiss on the same theory. R. 20.

## DISCUSSION

Aspen asks the Court to decide the very same legal questions that are currently pending in a lawsuit in Kentucky state court. Foremost among them: Whether the insurance policy that Murriel-Don had with Aspen provides coverage for the Jent/Hudson action, or whether the claim falls within the policy's automobile exclusion. It is a rare case in which a district court should entertain an insurance company's declaratory judgment action to resolve coverage issues that are squarely presented in an ongoing state-court case. *See Govt. Employees Ins. Co. v. Dizol*, 133

---

[1] On March, 30, 2011, Aspen filed a motion for leave to file an amended complaint. R. 14. As Aspen concedes, the changes in its amended complaint do not affect Murriel-Don's motion to dismiss. R. 14 at 2 n.1; R. 15 at 8. Murriel-Don agrees with Aspen's assessment. R. 17 at 2 n.2. Because Aspen timely filed its motion for leave to amend, and Murriel-Don never objected, the Court will grant the motion. This opinion considers Aspen's amended complaint.

[2] The record indicates that Albert Hudson is now deceased. R. 18.

4

F.3d 1220, 1225 (9th Cir. 1998) ("If there are parallel state proceedings involving the same issues and parties pending at the time the federal declaratory action is filed, there is a presumption that the entire suit should be heard in state court."). True, the Sixth Circuit has, at times, held that district courts have not abused their discretion by hearing such cases. Yet it has nonetheless repeatedly advised that the best exercise of that discretion, in the mine-run of cases, is to respect the state court's ability to handle the matter. To repeat, the Sixth Circuit has "held on a number of occasions that a district court should stay or dismiss complaints filed by insurance companies seeking a declaratory judgment as to their underlying state court lawsuits." *Travelers*, 495 F.3d at 273. Similarly, it has held that "declaratory judgment actions seeking an advance opinion on indemnity issues are *seldom helpful* in resolving an ongoing action in another court." *Manley, Bennet, McDonald & Co. v. St. Paul Fire & Marine Ins. Co.*, 791 F.2d 460, 463 (6th Cir. 1986) (emphasis added). And it has also "question[ed] the need for . . . declaratory judgments in federal courts when the only question is one of state law and when there is no suggestion that the state court is not in a position to define its own law in a fair and impartial manner." *Bituminous Cas. Corp. v. J & L Lumber Co.*, 373 F.3d 807, 816-17 (6th Cir. 2004) (quoting *Am. Home Assurance Co. v. Evans*, 791 F.2d 61, 63 (6th Cir. 1986)). The message is loud and clear.

This preference for respecting state courts' capacity to resolve these matters is perfectly sensible. It gives teeth to the Supreme Court's instruction to avoid "[g]ratuitous interference with the orderly and comprehensive disposition of [] state court litigation." *Brillhart*, 316 U.S. at 495. And it reflects the reality that federal district courts are seldom in a better position to

resolve state-insurance-law issues wound up with state-public-policy questions. *See Travelers*, 495 F.3d at 272 ("However, because Kentucky law is controlling, we conclude that Kentucky courts are in the better position to apply and interpret its law on these issues."); *see also Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 561 (6th Cir. 2008) (holding that questions about state insurance law "implicate[] important state policies").

The Sixth Circuit's five-factor test for deciding whether to exercise jurisdiction over declaratory judgment actions supports enforcing this clear preference here. Those factors are: (1) Whether the declaratory action would settle the controversy; (2) Whether a declaratory judgment would increase friction between federal and state courts; (3) Whether an alternative, better remedy is available; (4) Whether a declaratory judgment would serve a "useful purpose in clarifying the legal relations in issue"; and (5) Whether the declaratory remedy is being sought merely for the purpose of "procedural fencing" or to "provide an arena for a race for res judicata." *Grand Trunk W. R. Co. v. Consol. Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984). In their totality, these factors strongly support dismissing this case.

**Factor One:** Resolving this declaratory judgment action will not settle the controversy. *Travelers*, 495 F.3d at 271-72. As this Court has previously explained, this factor asks, not whether issuing a declaratory judgment would settle the controversy immediately before the Court, but rather whether doing so would settle the "ultimate controversy." *Grange Mut. Cas. Co. v. Safeco Ins. Co. of Am.*, 565 F. Supp. 2d 779, 788 (E.D. Ky. 2008). That is, whether it would settle "the controversy in the underlying state court litigation." *Travelers*, 495 F.3d at 272. Aspen's requested declaratory judgment would not do so.

First, Aspen's complaint leaves out some of the parties from the state court case. *See Bituminous Cas. Corp.*, 373 F.3d at 814. Murriel-Don also sued Bridget Dunaway and her law firm, Tooms & Dunaway, PLLC, for malpractice and breach of fiduciary duty. R. 9-2 at 18-20. Although Aspen protests that Murriel-Don's claims against Dunaway and her law firm should either be dismissed as frivolous or severed from the state court action, this Court declined to do so when it remanded Murriel-Don's lawsuit back to state court. *See Murriel-Don Coal Co. v. Aspen Ins. UK Ltd.*, No. 11-23-ART (E.D. Ky) R. 25. Therefore, the action currently pending in the Knott Circuit Court still involves Dunaway. If the Court were to grant declaratory judgment to Aspen, Murriel-Don's claims against Dunaway would remain dangling in state court.

Second, Aspen's declaratory judgment action may not even settle the state-court controversy between Aspen and Murriel-Don. In addition to breaching the insurance contract and the duty to defend, Murriel-Don also alleges that Aspen acted in bad faith and violated Kentucky's Unfair Claims Settlement Practices and Consumer Protection Acts. R. 9-2 at 12-18. It is true, as Aspen argues, that issuing a declaratory judgment in its favor would likely resolve all of these claims. If the Court rules that the Jent/Hudson action fell within the insurance policy's automobile exclusion, Murriel-Don's other claims would likely fail—for example, Aspen could not violate the Unfair Claims Settlement Practices Act if it was never obligated to pay the claim in the first place. But this argument only looks at one side of the coin. If the Court rules *against* Aspen and holds that it was obligated to provide a defense and indemnify Murriel-Don under the terms of the insurance policy, the parties would have to return to state court to

7

resolve Murriel-Don's remaining claims. A declaratory judgment action that would settle the underlying state-court litigation only if the Court rules a certain way still poses an undue risk of forcing the parties to engage in fractured, piecemeal litigation, and thus still weighs against exercising jurisdiction.

Therefore, because Aspen's declaratory judgment complaint does not address Murriel-Don's claims against Dunaway or her law firm and may not even settle the entire controversy between Aspen and Murriel-Don, it falls far short of settling the ultimate controversy in state court. The state court would still have a lot of work to do after this Court issued a declaratory judgment. This factor favors dismissal.

**Factor Two:** Issuing a declaratory judgment in this case could well increase friction between federal and state courts. There is a lawsuit currently pending in the Knott Circuit Court that presents the exact same questions Aspen asks the Court to decide in this action. As the Supreme Court has cautioned, "where another suit involving the same parties and presenting . . . the same state law issues is pending in state court, a district court may be indulging in '[g]ratuitous interference' if it permitted the federal declaratory action to proceed." *Wilton*, 515 U.S. at 283 (quoting *Brillhart*, 316 U.S. at 495). Of course, the "mere existence of a state court proceeding is not determinative of improper federal encroachment upon state jurisdiction." *Allstate Ins. Co. v. Green*, 825 F.2d 1061, 1067 (6th Cir. 1987). Rather, the Sixth Circuit has identified three "sub-factors" to guide district courts in determining whether the potential for friction is too great. Here, those three sub-factors support dismissal.

The first sub-factor is "whether the underlying factual issues are important to an informed resolution of the case." *Scottsdale Ins. Co.*, 513 F.3d at 560. Murriel-Don has identified at least one factual issue before the state court that would be critical to resolving Aspen's declaratory judgment action—whether Aspen explicitly reserved its rights to deny coverage when it initially hired Dunaway to defend Murriel-Don. In the state-court action, Murriel-Don claims that Aspen was estopped from denying coverage because Aspen did not notify Murriel-Don that Dunaway had only been hired for a limited period pending further review of the claim. R. 9-2 at 13-14. In its amended complaint, Aspen seeks a declaration that it was not estopped from denying coverage, R. 14-1 at 11, which will also entail a factual inquiry into whether Aspen adequately reserved its rights.

Beyond this factual overlap, a more concerning source of potential friction is that deciding this case will require the Court to answer the *exact same legal question* that is before the state court—i.e., whether the Jent/Hudson action was covered by Murriel-Don's insurance policy. True, the construction of Murriel-Don's insurance policy is a question of law. *State Farm Mut. Auto. Ins. Co. v. Slusher*, 325 S.W.3d 318, 322 (Ky. 2010) ("As a general rule, the construction and legal effect of an insurance contract is a matter of law for the court."). And, as the Sixth Circuit has articulated it, this first sub-factor focuses on factual questions. But it is not clear why the inquiry should be limited to factual questions. The overriding concern is with avoiding improper encroachment upon state jurisdiction, *Grand Trunk*, 746 F.2d at 326, and there is just as much (if not more) possibility for improper encroachment if the state and federal courts must decide identical legal, rather than factual, issues. Here, Aspen asks the Court to

9

answer the same legal question that is currently before the state court. If the state and federal courts arrive at different answers, there will surely be friction. Indeed, in *Nautilus Insurance Co. v. Grayco Rentals, Inc.*, No. 10-133-ART, 2011 WL 839549 (E.D. Ky. Mar. 7, 2011), this Court identified the very kind of question presented in this case—whether the terms of an insurance policy covered a particular claim—as a source of likely friction between the state and federal courts. *Id.* at *3.

The second sub-factor is whether the state court is in a better position to evaluate the issues than the federal court. *Scottsdale Ins. Co.*, 513 F.3d at 560. This case involves pure questions of state law "with which Kentucky state courts are more familiar and, therefore, better able to resolve." *Bituminous Cas. Co.*, 373 F.3d at 815; *see Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 818 (1989) (recognizing that "question[s] of state law [are] within the special expertise of the [state] courts"). True, the state-law questions are not particularly novel. But although some courts have focused on novelty as one basis for measuring whether state courts are in a better position to handle state-law issues, *see, e.g.*, *Scottsdale Ins. Co.*, 513 F.3d at 560; *Travelers*, 495 F.3d at 272, these cases do not say that state courts enjoy an advantage *only* over novel state-law issues. In *Bitumious Casualty Corp.*, 373 F.3d at 815, for instance, the Sixth Circuit held that the Kentucky court was in a better position to resolve questions of Kentucky law without immediately pointing to the novelty of the state-law issues. The court did then proceed to say the state-law issues were novel, but only as an additional reason the state court was in a better position to resolve the matter. *Id.*

10

Finally, the third sub-factor—"whether there is a close nexus between underlying factual and legal issues and state law and/or public policy," *Scottsdale Ins. Co.*, 513 F.3d at 560—also favors dismissal. This is a case about an insurance contract, which the state "regulate[s] . . . for the protection of [its] residents." *Id.* at 561. Interpreting the contract, therefore, will implicate state insurance-law policies, a recognized source of friction.

In total, then, the three sub-factors indicate that entertaining Aspen's declaratory judgment suit could increase friction with the state courts and unduly encroach on state authority. A lawsuit pending in state court presents the exact same legal issue Aspen wants the Court to adjudicate here, and that legal issue—the interpretation of an insurance contract—is a pure question of state law that is intimately intertwined with the state's regulation of the insurance industry. This factor also supports dismissal.

**Factor Three:** Relatedly—and still further supporting dismissal—Aspen has an alternate, better remedy in state court. *Scottsdale Ins. Co.*, 513 F.3d at 561-62. Aspen can simply present its argument that its insurance policy did not cover the Jent/Hudson action to the state court hearing Murriel-Don's case. Or, if Aspen so chooses, it may be able to institute a separate declaratory judgment action in Kentucky state court under Ky. Rev. Stat. § 418.040. *See id.* at 562. Kentucky courts are the experts on Kentucky law and thus provide a better forum for this state-law contract dispute. *See Travelers*, 495 F.3d at 272. Additionally, filing the declaratory judgment action in state court would avoid the "confusing problems of scheduling, orderly presentation of fact issues and res judicata" that inevitably arise when separate courts

11

hear the same case. *Grange*, 565 F. Supp. 2d at 791 (quoting *Bituminous Cas. Corp.*, 373 F.3d at 812). Therefore, this factor also favors dismissal.

**Factor Four:** Deciding this case would not serve a truly "useful purpose" by clarifying legal relations among the parties. *See AmSouth Bank v. Dale*, 386 F.3d 763, 786 (6th Cir. 2004); *Panhandle E. Pipe Line Co. v. Mich. Consol. Gas. Co.*, 177 F.2d 942, 944 (6th Cir. 1949). Yes, resolving the declaratory judgment action would clarify the legal relations between Murriel-Don and Aspen and terminate the immediate dispute between them. (How could deciding a declaratory suit not clarify and resolve the issues in that suit?) And this Court has said this limited clarification, though it may not resolve all of the issues in state court, counts in favor of keeping the case. *Grange*, 565 F. Supp. 2d at 787-88. But remember that clarification must serve a "useful purpose." *See AmSouth Bank*, 386 F.3d at 786. And it does not really do so here. The state court can also clarify these very same issues—probably better, with its state-law expertise and familiarity with this case. *See id*. And the Court knows of no reason why the "declaratory plaintiff will suffer injury unless legal relations are clarified" here rather than in the original litigation. *Id*. Ultimately, keeping this case would do little but "cause [Murriel-Don] to engage in litigation on two fronts." *Grange*, 565 F. Supp. 2d at 785 (citing *Panhandle E. Pipe Line Co.*, 177 F.2d at 944). Indeed, as the Sixth Circuit recognized in *Bituminous Casualty Corp.*, 373 F.3d at 813-14, when a federal court decides a declaratory judgment action presenting the exact same issues as those presented in a state court proceeding, there is simply no good result. "The federal court could either reach the same conclusions as the state court, in which case the declaration would have been unnecessary . . . or the federal court could disagree with

the state court, resulting in inconsistent judgments." *Id.* Either way, "the declaratory judgment action in federal court [] serve[s] no useful purpose." *Id.* This factor supports dismissal.

**Factor Five:** The last factor is whether Aspen is seeking the declaratory judgment merely for the purpose of "procedural fencing" or to "provide an arena for a race for res judicata." *Grand Trunk*, 746 F.2d at 326. The Sixth Circuit has cautioned that courts should be "reluctant to impute an improper motive to a plaintiff where there is no evidence of such in the record." *Scottsdale Ins. Co.*, 513 F.3d at 558. The Court will give Aspen the benefit of the doubt and presume that it did not file this action with an impure motive. But even still, Aspen cannot count this as a win. The Sixth Circuit has held that finding no improper motive under Factor Five simply means that the factor is neutral. *Travelers*, 495 F.3d at 272 ("Although no improper motive prompted this action, this factor is neutral.").

## CONCLUSION

Ultimately, balancing these factors strongly favors dismissal. The first four weigh in favor of declining to exercise jurisdiction, and the last one is neutral. Taking into account the preference for respecting state courts' jurisdiction over these matters, the best use of this Court's "broad discretion" is to dismiss Aspen's declaratory judgment action. *NGS American, Inc.*, 218 F.3d at 526. Accordingly, it is **ORDERED** as follows:

(1) Aspen's motion for leave to file an amended complaint, R. 14, is **GRANTED**.

(2) Murriel-Don's motion to dismiss, R. 14, is **GRANTED**. Roberta Jent's motion to dismiss on the same grounds, R. 20, is also **GRANTED**.

(3) This case is **STRICKEN** from the Court's active docket.

This the 27th day of May, 2011.



Signed By:
*Amul R. Thapar* AT
United States District Judge